**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000681
25-JAN-2019
07:54 AM**

NO. CAAP-17-0000681

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MICHELLE WRIGHT, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(NO. 3CPC-17-0000151)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, and Leonard and Reifurth, JJ.)

Defendant-Appellant Michelle Wright was arrested for crimes related to drug distribution and possession. Wright initially pleaded not guilty, but subsequently agreed to a plea deal proposed by Plaintiff-Appellee State of Hawai'i. Prior to the commencement of trial and outside the presence of the jury, the Circuit Court of the Third Circuit ("Circuit Court")[1] heard Wright's request to change her plea. The plea was not accepted and the case proceeded to trial. The jury found Wright guilty on seven of eight counts in the Complaint.

Wright appeals from the August 25, 2017 Judgment of Conviction and Sentence entered by the Circuit Court. Wright was convicted on Count 1, Promoting a Dangerous Drug in the First Degree ("PDD 1"), in violation of Hawaii Revised Statutes ("HRS") section 712-1241(1)(a) (Supp. 2016); Count 3, Promoting a Dangerous Drug in the Second Degree ("PDD 2"), in violation of HRS section 712-1242(1)(b) (Supp. 2016); Count 5, Promoting a

---

[1] The Honorable Ronald Ibarra presided over pre-trial and trial proceedings. The Honorable Henry T. Nakamoto presided over sentencing.

Dangerous Drug in the Third Degree, in violation of HRS section 712-1243(1) (2014); Counts 2, 4, and 6, Prohibited Acts Related to Drug Paraphernalia, in violation of HRS section 329-43.5 (Supp. 2016); and Count 8, Attempted Promoting a Controlled Substance In, On, or Near Schools, School Vehicles, Public Parks, or Public Housing Projects or Complexes, in violation of HRS sections 705-500(1)(b) and 712-1249.6(1) (2014).

On appeal, Wright contends that the Circuit Court: (1) abused its discretion in rejecting the factual basis for her guilty plea; and (2) erred as a matter of law when it insisted that she had to know the weight of the methamphetamine in her possession in order to plead guilty.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Wright's points of error as follows and affirm.

A.    Wright's attempted change of plea.

On June 20, 2017, the Circuit Court addressed Wright's acceptance of the State's offer that she plead guilty to Count 3 for PDD 2 in return for dismissal of all other charges. During the ensuing colloquy, Wright clarified that she understood the charge to which she was pleading. The Circuit Court found that Wright understood and knowingly, voluntarily, and intelligently accepted the State's offer with an understanding of the consequences of her acceptance; went over the immigration consequences of her guilty plea; and confirmed with Wright that her lawyer explained the State's evidence against her and the facts the State needed to prove to convict her. The court then conducted an inquiry into the factual basis for Wright's guilty plea.

The Circuit Court stated precisely the elements of the PDD 2 charge to which Wright was pleading guilty with language essentially taken from the Complaint and which expressly stated that Wright knowingly had one-eighth ounce or more of methamphetamine. The Circuit Court confirmed that Wright was in

possession of methamphetamine and questioned her as to the drug's weight:

> THE COURT: . . . What did you possess?
>
> MS. WRIGHT: Methamphetamine.
>
> THE COURT: Okay, and did you know it was methamphetamine?
>
> MS. WRIGHT: Yes, Your Honor.
>
> THE COURT: Where did you possess it?
>
> MS. WRIGHT: In a backpack.
>
> THE COURT: Whose backpack?
>
> MS. WRIGHT: My backpack.
>
> THE COURT: Who put it in the backpack?
>
> MS. WRIGHT: I did.
>
> THE COURT: Okay, and how much was the weight of the methamphetamine? It says -- what's that? One-eighth ounce or more?
>
> MS. WRIGHT: One-eighth ounce or more, yeah.
>
> THE COURT: Do you know the exact weight?
>
> MS. WRIGHT: No.
>
> THE COURT: But do you know it was one-eighth ounce or more?
>
> MS. WRIGHT: I don't know the weight of it.
>
> THE COURT: Yeah, but did you know it was more than one-eighth ounce?
>
> MS. WRIGHT: After. After they weighed it out, that's --
>
> THE COURT: When you possessed it?
>
> MS. WRIGHT: When I possessed it, no. I didn't know the exact weight.

When asked to describe the methamphetamine's container, Wright responded that it was a Ziploc bag and that she had put the methamphetamine in the bag but did not weigh it. Then the court asked:

> THE COURT: How did you know how much to put in the Ziploc bag?
>
> MS. WRIGHT: I didn't know. It was given to me, so --
>
> THE COURT: But I take it - you said you put it in a Ziploc bag?
>
> MS. WRIGHT: Yes, Your Honor.

> THE COURT: So was it given to you in another container?
>
> MS. WRIGHT: Yes.
>
> THE COURT: Did you put everything that was given to you in another container in the Ziploc bag?
>
> MS. WRIGHT: Yes, Your Honor.
>
> THE COURT: . . . What kind of container was it given to you in?
>
> MS. WRIGHT: In a Hydro Flask.
>
> THE COURT: In a Hydro Flask?
>
> MS. WRIGHT: Yes.
>
> . . . .
>
> THE COURT: Okay. So the meth was not in the Hydro Flask but it was in a Ziploc bag in the Hydro Flask?
>
> MS. WRIGHT: Yes.
>
> . . . .
>
> THE COURT: Okay, and did you – you said you put it in your backpack?
>
> MS. WRIGHT: It was in a backpack.
>
> THE COURT: And was the Hydro Flask and the Ziploc bag in the Hydro Flask when you put it in your backpack?
>
> MS. WRIGHT: The backpack was given to me. The Hydro Flask was inside the backpack. I took the Hydro Flask out of the backpack and put it on the side. Inside the Hydro Flask was the Ziploc bag with the methamphetamine.

Wright further stated that she "didn't actually put the meth [her]self inside of the Ziploc bag," that she was not told anything about what was in the Hydro Flask, and that she had been holding onto the Hydro Flask for someone else for about a month and a half but had never taken the methamphetamine out of the Hydro Flask.

The Circuit Court tried to clarify with Wright whether she knew the weight of the methamphetamine in the Hydro Flask, and this time she admitted that she was given and used "a sixteenth" of methamphetamine:

> THE COURT: So what I'm trying to determine, if you knew -- if you don't know, I can't accept your plea. I got to determine whether you knew -- that's what I'm getting at -- the weight. . . All I'm asking you is, did you know the aggregate weight that was in whatever, in the Hydro Flask, was one-eighth ounce or more? You didn't know?
>
> MS. WRIGHT: No, Your Honor.

4

THE COURT: Why did you get it? Why was it given to you?

MS. WRIGHT: The person was going shopping, wanted me to hold their items there. So they went shopping. They gave me a sixteenth of ice, methamphetamine.

After confirming that Wright was familiar with how much an "eight ball" (i.e., one-eighth of an ounce) of methamphetamine was and how it looked in size, the Circuit Court asked Wright if the Hydro Flask contained more than an eight ball:

THE COURT: And the amount you had in the flask, did it look like the size of an eight ball?

MS. WRIGHT: No. That would be way more.

THE COURT: Which would be way more?

MS. WRIGHT: Whatever was in the flask.

THE COURT: Would be more than the eight ball?

MS. WRIGHT: Yeah.

. . . .

THE COURT: Okay, and so my question is, because you bought an eight ball, you know how much an eight ball looks like?

MS. WRIGHT: Yes.

THE COURT: The one-eighth ounce?

MS. WRIGHT: Yeah.

THE COURT: And comparing what you bought as an eighth ounce with what you got in the flask, which was more?

MS. WRIGHT: The flask.

THE COURT: The flask contained more than the eight ball?

MS. WRIGHT: Right.

The Circuit Court then asked whether Wright had that information when she saw what was in the Hydro Flask, to which she responded, "No. I didn't know that that was in that container. I was just holding it for the person that went to the store." When asked if she had looked inside the Hydro Flask, Wright said that she did, and that she saw methamphetamine. Wright, however, still maintained that she did not see or know how much mehtamphetamine was inside the Hydro Flask.

The Circuit Court explained why it needed to find that Wright knew that she held one-eighth ounce or more of methamphetamine, and ultimately determined that it was not satisfied with the factual basis for Wright's guilty plea and therefore could not accept it:

> THE COURT: Okay. I got to find that you had one-eighth ounce or more, that you knew you had one-eighth ounce or more, and you're not -- from what I'm questioning you, unless you tell me more, I don't see -- you tell me -- maybe I should ask the general question. Did you possess one-eighth ounce or more of meth?
>
> MS. WRIGHT: At that moment?
>
> THE COURT: Whenever.
>
> MS. WRIGHT: I have purchased an eight ball before.
>
> THE COURT: Well, for this charge, March 8th, 2017, in Kona, County and State of Hawaii, did you possess more -- did you possess one-eighth ounce or more meth?
>
> MS. WRIGHT: No.
>
> THE COURT: Then why are you pleading guilty?
>
> MS. WRIGHT: Because I knowingly had it there for someone else.
>
> THE COURT: You said knowingly you had it for someone else.
>
> MS. WRIGHT: I was holding their things, their merchandise for them.
>
> THE COURT: And did you know you were holding more than one-eighth ounce?
>
> MS. WRIGHT: No.
>
> THE COURT: Well, then you're not -- shouldn't plead guilty.
>
> MS. WRIGHT: Okay.
>
> THE COURT: So, [(Wright's counsel)], we'll continue with the jury trial. So I'm not accepting your plea as proffered.

Reconvening after a recess, but before calling in the jury, the Circuit Court reiterated why it would not accept Wright's guilty plea:

> THE COURT: [G]iven your responses to the court's questioning and going over the guilty plea form, the court did not accept -- was not going to accept your guilty plea based on your responses to the court's questions.
>
> MS. WRIGHT: Yes, Your Honor.
>
> THE COURT: And so you did not provide a basis for which you -- in which I asked you that you knew that the weight of

6

the methamphetamine was one-eighth ounce or more; is that correct?

MS. WRIGHT: Yes.

THE COURT: And so given that, are you rejecting the -- what is your -- you reject or accept the State's offer, given what you must tell the court in order for the court to accept your plea? Miss Wright?

MS. WRIGHT: Yes, Your Honor. I -- I'm at a loss for words at this point.

THE COURT: So given your response to me --

MS. WRIGHT: Yes, Your Honor.

THE COURT: -- which you did not state that you knew the meth that you had in that flask was one-eighth ounce or more --

MS. WRIGHT: Right.

THE COURT: -- I could not accept your guilty plea.

MS. WRIGHT: I understand, Your Honor.

B.    The Circuit Court did not err.

(1) Because Wright's first point of error is dependent on her second point of error, the second point will be addressed first. Wright alleges that the Circuit Court erred when it insisted that Wright's knowledge of the weight of the methamphetamine in her possession was a necessary element of PDD 2 under HRS section 712-1242. Relying on *State v. Kupihea*, 98 Hawai'i 196, 46 P.3d 498 (2002), Wright contends that PDD 2 has only two elements: "[F]irst, a person must <u>knowingly possess</u> a substance. Second, that person <u>must know</u> that said substance <u>is</u> <u>methamphetamine</u>." (Emphasis provided.)

HRS section 712-1242 provides, in relevant part, that:

> (1) A person commits the offense of promoting a dangerous drug in the second degree if the person *knowingly*:
>
> . . . .
>
> (b)    Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
>
>    (i)    *One-eighth ounce or more*, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

Haw. Rev. Stat. § 712-1242(1)(b)(i) (emphasis added). Of issue is whether the requisite state of mind, "knowingly," applies to

not just the possession and nature of the substance, but also, to the weight of the substance under HRS section 712-1242.

Contrary to *Kupihea*, HRS sections 702-204 (2014), 702-205 (2014), 702-207 (2014), and *State v. Manewa*, 115 Hawai'i 343, 358, 167 P.3d 336, 351 (2007) establish that "knowingly" applies to the weight of the substance under HRS section 712-1242. Together, the three statutes establish that the requisite state of mind applies to all elements, unless stated otherwise or is clearly contrary to legislative intent, and applies to attendant circumstances as specified by the definition of an offense.

The supreme court has applied HRS sections 702-204, 702-205, and 702-207 in holding that "knowingly" applied to the weight of a possessed-substance, as an attendant circumstance, under the offense of PDD 2. *See Manewa*, 115 Hawai'i at 358, 167 P.3d at 351 (quoting *State v. Wallace*, 80 Hawai'i 382, 412, 910 P.2d 695, 725 (1996)). In *Manewa*, the court held that the State needed to prove that the defendant had the requisite state of mind as to all elements of the offense, including that he had the minimum amount of the possessed-drug[2]:

> A person commits the offense of Promoting a Dangerous Drug in the Second Degree in violation of HRS § 712-1242(1)(b)(i), inter alia, if the person knowingly "[p]ossesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of . . . one-eighth ounce or more, containing methamphetamine[.]" Thus, for this offense, the prosecution was required to prove beyond a reasonable doubt that Petitioner (1) possessed one or more substances containing methamphetamine (i.e., the prohibited conduct); *(2) the substances were of an aggregate weight of one-eighth ounce or more (i.e., the attendant circumstance of requisite quantity); and (3) he acted knowingly (i.e., the requisite*

---

[2] New York has taken the same stance on this issue. *See People v. Perez*, 616 N.Y.S.2d 928, 933-34 (N.Y. App. Div. 1994) (citing *People v. Ryan*, 626 N.E.2d 51, 54 (N.Y. 1993)) (concluding "that there is a *mens rea* [(i.e., knowingly)] element associated with the weight of the drug" in the offense of Criminal Possession of a Controlled Substance in the Second Degree). Other jurisdictions, however, have held that a defendant's knowledge of the weight or quantity of drugs in his/her possession is not an essential element of the offense. *See, e.g., People v. Northrop*, 541 N.W.2d 275, 278 (Mich. Ct. App. 1995) (citing *People v. Cortez*, 346 N.W.2d 540 (Mich. Ct. App. 1984)) ("This Court has held that knowledge of the quantity is not an essential element of the crime [of delivery, possession with intent to deliver, or possession of a controlled substance.]"); *State v. Papadakis*, 643 N.W.2d 349, 354 (Minn. Ct. App. 2002) ("We conclude that possession of a controlled substance and knowledge of the nature of the substance are essential elements, but that the state does not have to prove, in addition to all other elements, that appellant knew the precise weight or quantity of the controlled-substance.").

> *state of mind with respect to both of the foregoing
> elements).*

115 Hawai'i at 358, 167 P.3d at 351 (emphasis omitted) (citing
*Wallace,* 80 Hawai'i at 413, 910 P.2d at 726).[3/]

Accordingly, the Circuit Court did not err in holding
that Wright had to know that the methamphetamine in her
possession was at least one-eighth of an ounce in order to
satisfy a necessary element of the offense under HRS section 712-
1242. Wright's second point of error is therefore without merit.

(2) In Wright's first point of error, she alleges that
the Circuit Court abused its discretion when evaluating the
factual basis of her guilty plea by asking confusing and leading
questions that obfuscated her testimony and caused her to
incorrectly state that she was rejecting the State's plea offer.
Wright argues that each time she stated her knowledge of the
weight of the methamphetamine which she had in her possession,
the Circuit Court would follow up with confusing questions that
would intimidate and mislead her. Wright further contends that
the Circuit Court clearly exceeded the bounds of its factual
inquiry when it advised her that she "shouldn't plead guilty",
and abused its discretion by attempting to "clarify" the record
by having Wright state that she had rejected the State's plea
offer--despite the fact that she stated on the record that she
had accepted the State's plea offer--rather than the Circuit
Court refusing to accept Wright's guilty plea.

Hawai'i Rules of Penal Procedure ("HRPP") Rule 11
establishes the procedures for guilty pleas. This rule provides
that "[n]otwithstanding the acceptance of a plea of guilty, the
court *shall not* enter a judgment upon such plea without making
such inquiry as shall satisfy it that there is a factual basis
for the plea." Haw. R. Pen. P. 11(g) (emphasis added). Under
HRPP Rule 11,

---

[3/] Wright argues that the Hawai'i legislature could not have intended
for a defendant's knowledge of the subject drug's weight to be an element of
PDD 2, reasoning that "[d]rug offenders would learn to take the precaution of
never weighing their illegal substances so that they would not have knowledge
of its weight, thereby easily creating a defense to more serious drug
charges." Wright's hypothetical, however, is unsupported and fails to
demonstrate that the legislative intent behind HRS section 712-1242 is
contrary to *Manewa*'s interpretation of HRS section.

> the court is prohibited from entering judgment upon a guilty plea if it is not subjectively satisfied that there is a factual basis for the plea. The court must satisfy itself that the conduct which the defendant admits constitutes the offense charged in the indictment, complaint, or information or an offense included therein to which the defendant has pleaded guilty. While the factual basis may come from various sources, it must appear on the record.

*State v. Merino*, 81 Hawaiʻi 198, 217, 915 P.2d 672, 691 (1996) (emphasis and brackets omitted) (quoting *State v. Teves*, 4 Haw. App. 566, 569, 670 P.2d 834, 837 (1983));[4/] *accord Guity*, 2016 WL 6427681, at *7.

*Merino* explicitly cautions the trial court against *accepting* a guilty plea absent a strong factual basis for the plea when the defendant contemporaneously denies the acts constituting the crime charge:

> In instances "where a tendered plea of guilty is accompanied by a contemporaneous denial of the acts constituting the crime charged," this court has ruled that
>
> > a searching inquiry addressed to the defendant personally, to ensure the defendant's complete understanding of the finality of his guilty plea if accepted, should be conducted by the trial court before accepting the plea. Only then, and only after satisfying itself that there is a strong factual basis for the plea, ought the trial court accept the plea.

*Merino*, 81 Hawaiʻi at 217 n.19, 915 P.2d at 691 n.19 (emphases omitted) (quoting *State v. Smith*, 61 Haw. 522, 524–25, 606 P.2d 86, 89 (1980)).

An inquiry into the factual basis for a guilty plea requires the trial court to assess the defendant's conduct against the essential elements of the charged crime. *See, e.g., Teves*, 4 Haw. App. at 570, 670 P.2d at 837 (assessing the record for evidence of defendant's conduct against the essential elements of Theft in the First Degree). Here, Wright attempted to plead guilty to Count 3 of the State's Complaint, PDD 2, in violation of HRS section 712-1242(1)(b). Since the State needed

---

[4/] In *Merino*, the supreme court discussed HRPP Rule 11(f) which was patterned after Federal Rules of Criminal Procedure Rule 11(b)(3), titled "Determining the Factual Basis for a Plea," which similarly provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3); *See State v. Guity*, No. CAAP-12-0000287, 2016 WL 6427681, at *7 n.7 (Hawaiʻi Ct. App. Oct. 31, 2016), *cert. granted*, No. SCWC-12-0000287, 2017 WL 836813 (Haw. Mar. 3, 2017). HRPP Rule 11(f) has since been renumbered as HRPP Rule 11(g) effective July 1, 2014.

to prove that Wright knew that she held one-eighth ounce or more of the possessed-drug for conviction of PDD 2 under HRS section 712-1242, the Circuit Court needed to satisfy itself, pursuant to HRPP Rule 11(g), that there was a factual basis to support that Wright knew this fact in order for it to accept Wright's guilty plea. Haw. R. Pen. P. 11(g); *Merino*, 81 Hawaiʻi at 217, 915 P.2d at 691.

The record demonstrates that Wright appeared to contradict herself several times regarding her knowledge of the weight of the methamphetamine and explicitly acknowledged that she did not know the weight of the methamphetamine while she possessed it. Wright first admitted to putting the methamphetamine in the backpack and confirmed that she was in possession of "one-eighth ounce or more" of the substance. However, Wright later claimed that someone else gave her the backpack with the Hydro Flask and methamphetamine inside and that she was simply holding the backpack and did not know the weight of the methamphetamine because she had never taken it out of the flask. Against her claims that she did not know the weight of the methamphetamine, Wright stated that someone gave her "a sixteenth of ice, methamphetamine." Almost immediately after relaying the weight of the methamphetamine, Wright claimed that she did not know she was holding more than one-eighth of an ounce. At that point, the Circuit Court stated to Wright, "then you're not -- shouldn't plead guilty . . . So I'm not accepting your plea as proffered."

Further, the Circuit Court stated exactly what the offense of PDD 2 entailed, which included knowledge of the weight of the substance, and confirmed that Wright understood exactly what she was pleading guilty to. The Circuit Court also explained to Wright why it needed to find that she was aware of the weight of the methamphetamine to accept her guilty plea; yet, Wright maintained that she did not know the weight of the methamphetamine while it was in her possession.

In sum, the record does not demonstrate a strong factual basis as to Wright's knowledge of the weight of the methamphetamine in her possession. Accordingly, the Circuit

Court did not abuse its discretion in rejecting Wright's guilty plea as it was prohibited from entering a judgment upon Wright's guilty plea under HRPP Rule 11(g); *Merino*, 81 Hawai'i at 217, 915 P.2d at 691 (citing *Teves*, 4 Haw. App. at 569, 670 P.2d at 837); or at the very least, because it was accompanied by a contemporaneous denial of the act—that is, her knowledge as to the weight of the methamphetamine—constituting PDD 2. *Merino*, 81 Hawai'i at 217 n.19, 915 P.2d at 691 n.19 (citing *Smith*, 61 Haw. at 524-25, 606 P.2d at 89). Wright's first point of error is therefore without merit.

Based on the foregoing, we affirm the August 25, 2017 Judgment of Conviction and Sentence.

DATED: Honolulu, Hawai'i, January 25, 2019.


On the briefs:

Edward J. Fetzer
for Defendant-Appellant.

Linda L. Walton,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12